UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANICE TEAL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-06-3726 |
| | § | |
| THE CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant City of Houston's ("the City") motion for partial summary judgement. (Dkt. 27). Plaintiff Janice Teal has not filed a response. After careful consideration of the pleading, the summary judgment evidence, and the applicable law, defendant's motion for partial summary judgment is GRANTED.

## BACKGROUND

On July 28, 2006, Houston police officer William Archer, after observing Janice Teal violate a Houston traffic law, conducted a traffic stop. After discovering that Teal was subject to several outstanding traffic warrants, Archer placed Teal in the back of his patrol vehicle. Ultimately, Archer drove Teal to a secluded location, where Teal performed oral sex on him. Thereafter, Teal reported the incident to the Houston Police Department ("HPD") Internal Affairs Division. Archer was immediately placed on administrative leave. After an internal investigation, Archer was criminally charged. Subsequently, Archer resigned and pled guilty to the felony of engaging in inappropriate sexual conduct with a person in custody. On November 27, 2006, Teal filed the present civil action against Archer and the City. In her complaint against the City, Teal includes the following allegations: failure to train regarding reasonable protocol for stopping and detaining suspects; failure

to properly supervise Archer; failure to properly screen, identify and eliminate recruits with the propensity to commit violent sexual acts; improperly permitting officers to carry rapist kits in their vehicles and/or failing to inspect said vehicles to uncover contraband; improperly permitting officers to tint the windows of their squad cars so that they can conceal civil rights violations and criminal acts therein; creating a work environment in which women are demoralized, subjugated and victimized; and maintaining a work environment in which the demoralization, subjugation and victimization of women is tolerated. (Dkt. 1). On September 21, 2007, the City filed this motion for partial summary judgment.

### STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

2

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Instead, the nonmovant must identify specific evidence in the record and articulate precisely how that evidence supports his or her claims. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Where the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show that there is a genuine issue for trial, summary judgment is appropriate. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992). Importantly, where the movant has not met its initial burden, the nonmovant's failure to respond to a motion for summary judgment is insufficient to sustain summary judgment. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985); *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611 (5th Cir. 1967). However, where the movant meets the initial burden, "summary judgment should be granted and will be affirmed by [a Fifth Circuit] court when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071(per curiam).

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*,72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that

3

the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986).

An examination of the substantive law is essential to determining whether or not summary judgment should be granted. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

**DISCUSSION**

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Municipalities and cities qualify as persons under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978). However, municipalities "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996) ("If a § 1983 suit is brought against a [municipality], the claim must be based upon the implementation or execution of a policy or custom which was officially adopted by that body's officers." (citing *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995))). To support such a claim, a plaintiff must plead facts which show: (1) the existence of a policy or custom; (2) governmental policy makers knew of,

4

or should have known of, the existence of the policy; (3) a constitutional violation did occur; and, (4) the custom or policy caused the constitutional violation. *See Gunn*, 81 F.3d at 532–33.

Teal alleges that the City's hiring and training policies were inadequate.[1]  To hold a city or municipality liable pursuant to § 1983 for constitutional violations caused by its inadequate hiring and training policies, a plaintiff must prove culpability and causation. *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).  The municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences. *Id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact . . . .  Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality–a 'policy' as defined by our prior cases–can a city be liable for such a failure under § 1983.").  Moreover, the municipality must be the "moving force" behind the alleged constitutional violation. *Snyder*, 142 F.3d at 795; *cf. Monell*, 436 U.S. at 694.

Fifth Circuit decisions demonstrate the stringency of the § 1983 municipal liability standard. In *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745 (5th Cir. 1993), the Fifth Circuit held that a school board did not act with deliberate indifference to the constitutional rights of

---

1       Teal's allegations concerning the City's failure to train regarding reasonable protocol for stopping and detaining suspects, failure to properly supervise Archer, failure to properly screen, identify and eliminate recruits with the propensity to commit violent sexual acts, improperly permitting officers to carry rapist kits in their vehicles and/or failing to inspect said vehicles to uncover contraband, and improperly permitting officers to tint the windows of their squad cars so that they can conceal civil rights violations and criminal acts therein, challenge the adequacy of the City's hiring and training procedures and its general customs and policies.

        Teal's allegations regarding the City's creating a work environment in which women are demoralized, subjugated and victimized, and maintaining a work environment in which the demoralization, subjugation and victimization of women is tolerated, other than possibly bolstering the alleged inadequacies of the City's general customs and policies, fail as a matter of law.  As is the case with Teal's other allegations, there is no evidence to support them. Clearly, the nonmovant's summary judgment burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

schoolchildren when it failed to remove from the classroom a teacher accused of fondling students. The *Gonzalez* court noted that mere negligence fell short of the "deliberate indifference" standard and that "[i]n order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a 'decision by the city itself to violate the Constitution.'" *Id.* at 759 ( quoting *Harris*, 489 U.S. at 395 (O'Connor, J., concurring)).  Similarly, in *Stokes v. Bullins*, 844 F.2d 269 (5th Cir. 1988), the Fifth Circuit held that a county that failed to request a National Crime Information Center check for police applicants did not act with deliberate indifference toward the rights of its citizens, even though conducting a check would have disclosed that the applicant (who later shot the plaintiff) had a history of fifteen arrests for assault, armed robbery, and other misdeeds.  The *Stokes* court "saluted the efficiency of an NCIC check but shied away from anointing it as a constitutional requirement." *Snyder*, 142 F.3d at 796 (citing *Stokes*, 844 F.2d at 275).

The City moves the court for partial summary judgment.  To demonstrate the absence of a genuine issue of material fact as to Teal's § 1983 claim against the City, it offers the affidavits of Assistant Chiefs of Police Michael Dirden and George Buenik.[2]  In their expert reports and affidavits, Dirden and Buenik explain the application and acceptance protocol of the HPD Training Academy, the training protocol for police cadets and incumbent officers, the extent to which police officers are supervised, the internal investigation process, and the various general orders and department rules.

Minimum requirements are established by Chapter 143 of the Texas Local Government Code, [Texas Commission on Law Enforcement Standards and

---

2       Assistant Chief Michael Dirden is a twenty-two year veteran of the Houston Police Department.  Assistant Chief George T. Beunik is a twenty-five year veteran of the Houston Police Department.

Education ("TCLEOSE")] regulations and by this department's set of Recruit Selection Criteria. The applicant completes an extensive application form and a thorough background investigation is completed. As per TCLEOSE requirements, cadets must have psychological clearance and medical clearance (including drug testing) . . . .

The training received in the Training Academy, whether as a police cadet or as an incumbent officer, reflects sound, commonly accepted law enforcement techniques that are consistent with state statutes and Constitutional principles. The training received meets or exceeds the training requirements set out by TCLEOSE, the Commission legislatively charged with establishing such guidelines. Cadets and incumbent officers are trained in commonly accepted police procedures in gaining and maintaining control over individuals and various incident scenes. This includes the proper way to conduct a traffic stop.

Officers are also trained in laws of arrest, search and seizure, the Texas Code of Criminal Procedure, the Texas Penal Code, and the U.S. Constitution. The training in these areas is generally provided by Harris County Assistant District Attorneys. Moreover, once cadets successfully complete the Training Academy curriculum, they are placed on the department's Field Training Program. In the Field Training Program they are teamed with several different experienced field training officers for evaluation as to whether the now probationary officer can apply what he or she has learned in the Training Academy to real world situations. This program allows for the probationary officer to be evaluated while being closely supervised and

the Field Training Officer can provide immediate feedback in an on-the-job setting. Under the design of the program, the probationary officer's performance is critiqued on a daily basis and remedial training is available to address any perceived weaknesses. The program will last four to six months (depending on if and how much remedial training is necessary) and ultimately, a probationary officer who cannot successfully complete the Field Training Program is separated from the Department as an officer. . . .

Officers are adequately supervised. They are provided with a set of continually updated Rules and General Orders to which they may turn for guidance in determining what is expected of them. In addition to updated Rules and General Orders, Circulars, Roll Call training video tapes and Training Bulletins, may be distributed department-wide to advise officers on developing topics. Officers may also contact the District Attorney's Intake Division or the Municipal Prosecutor's Office if legal questions arise. Officers have formal performance evaluations twice a year and supervisors are routinely in the field to assist officers with questions that arise. . . .  By department policy, officers are required to complete twice the amount of in-service training required by TCLEOSE. . . .

Officers are aware that all formalized allegations of misconduct are investigated within the Department's Internal Investigations structure.  Officers know that if a violation of Rules or General Orders is proven, that officer is subject to discipline ranging from a written reprimand placed in their permanent personnel file, to unpaid days of suspension, to termination from the department. . . .  [T]he

department has developed the Personnel Concerns Program under General Order 300-24. This program is another tool used by the department to help identify and correct patterns of negative conduct on the part of officers. . . .

General Order 100-06, *Department Mission, Values, and Guiding Principles*, advises officers that all employees will engage in behavior that is beyond ethical reproach and reflects the integrity of police professionals. Trading sexual favors for special treatment is illegal and does not reflect the custom, policies and practices of the department. That same General Order also reinforces to officers their training that employees will uphold this country's democratic values as embodied in the Constitution and they are to dedicate themselves to the preservation of liberty and justice for all. Finally, General Order 100-06 explicitly sets out that all persons should be treated fairly and equitably. The General Order does not allow for deprivation of constitutional rights or the demoralization, subjugation or victimization of women.

[I]n general, other General Orders also address the proper handling and treatment of prisoners. General Order 500-20, *Treatment of Prisoners, Suspects, and Other Citizens*, sets out that the employees of the Houston Police Department will treat all prisoners, suspects, and citizens in a humane and lawful manner. That General Order also specifically reminds employees that they are to report even minor mistreatment of prisoners. This supports the position that the department does not tolerate misconduct with prisoners. Similarly, General Order 500-01, *Effecting Arrests and Searches*, states, "The highest regard possible will be given to arrested

9

individuals' and officers' safety and well-being."  Further, General Order 500-02,
*Handling and Transporting Prisoners*, states, "Employees will treat all persons with
respect and dignity." . . .

Under Department Rule 2.14, Houston Police Officers have a responsibility
to know the laws and ordinances they are charged with enforcing.  They also are
responsible [sic] knowing all department orders, rules, and the duties and procedures
governing their specific assignments.  Also, in General Order 200-08, *Conduct and
Authority*, officers are given a variety of guidelines to govern their conduct:

> *Employees are held accountable for the manner in which they
> exercise the authority of their office or position. Reasonableness and
> sound judgement will dictate the actions of all employees along with
> the boundaries of authority provided by federal, state and local law,
> and the policies and procedures of the [HPD]. . . .*

> *Officers will exhibit professional conduct at all times and will
> not engage in any activity, including unlawful activity, that would
> degrade or bring disrespect upon the officer or the department. . . .*

> *Employees will respect the rights of individuals and will not
> engage in discrimination, oppression, or favoritism whether by
> language, act or act of omission. . . .*

> *Employee's behavior will be limited to conduct that is
> reasonable and prudent. No employee will commit any act on duty or*

10

> *off duty in an official capacity that tends to bring reproach, discredit,*
>
> *or embarrassment to the department. . . .*
>
> *Employees will abide by the laws of the jurisdiction they are*
>
> *in. . . .*

[T]he department also provides guidance via General Orders on the handling of persons suspected of committing Class C Misdemeanor criminal offenses (i.e. offenses punishable by fine only) and this would include a person suspected of committing a traffic offense. General Order 500-14, *Class C Misdemeanors*, does direct an officer to check whether a person has municipal warrants, so Defendant Archer was correct in doing that. However, General Orders also provide guidance on the handling and transporting of prisoners that placed Defendant Archer on notice of what was expected of him. Although police work must always provide leeway for emergency or rapidly evolving situations, in a case such as this, a routine traffic stop, the department's general principles should have controlled. For example, officers are aware that as per General Order 500-01, *Effecting Arrests and Searches*, whenever practical, prisoner searches will be performed by employees of the same sex as the prisoner. Now, while an officer may still conduct a Terry pat down as a matter of officer safety, this General Order sends the message to male officers that they should minimize their physical contact with female prisoners.

Further, as per General Order 500-02, *Handling and Transporting Prisoners*, officers are directed that when transporting juveniles or persons of the opposite sex, employees will provide to the dispatcher the origin and destination of the transport

11

and the sex of the person being transported.  In return the Dispatcher shall provide

time checks on departure and arrival.  The General Order also provides that the

transports will be made via the safest, most direct route. . . .

(Dkt. 27, Ex. B); (*see also* Dkt. 27, Ex. C).

The City further notes that Archer's work history was "spotless." (Dkt. 27).  Each semiannual evaluation of Archer reveals continuous improvement in all performance areas. (Dkt. 27, Ex. E).  During his employment, Archer received two supervisory commendations and one letter of commendation from a citizen. (Dkt. 27, Ex. F).   The proffered evidence aims, solely, at demonstrating that no genuine issue of material fact exists as to Teal's § 1983 claim against the City of Houston.  Under the aforementioned standard, Teal carries the burden of proving the City's culpability and causation. *Snyde*, 142 F.3d at 795.  Teal must show that the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences. *Id.*; *Harris*, 489 U.S. at 388-89.   Moreover, the municipality must be the "moving force" behind the constitutional violation. *Id.*; *cf. Monell*, 436 U.S. at 694.   The summary judgment evidence demonstrates that the city is neither culpable for nor the culprit of Archer's conduct. *Little*, 37 F.3d at 1075 (summary judgment movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." (quoting *Celotex*, 477 U.S. at 323-25)).

Having satisfied its initial summary judgment burden, the City is entitled to judgment as a matter of law unless Teal, the nonmovant, shows by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace*, 80 F.3d at 1046-47.  Teal did not respond to the City's

12

motion for partial summary judgment.  Therefore, Teal has failed to meet her burden of showing the existence of a genuine issue of material fact. *See Little*, 37 F.3d at 1071(per curiam) (where a movant meets its initial evidentiary burden, "summary judgment should be granted and will be affirmed by [an appellate] court when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict.").  The City of Houston's motion for partial summary judgment is, therefore, granted.

CONCLUSION

For the above discussed reasons, City of Houston's motion for partial summary judgment is GRANTED.

Signed at Houston, Texas on October 22, 2007.

_____
Gray H. Miller
United States District Judge

13
